## Tyler to the use of Southworth *versus* Moore.

*Deed.*— *Construction of, where Premises and Habendum differ.*— *Life Estate, and Estates in Tail.*— *Rule in Shelly's Case, when inapplicable.*

Where one by deed conveyed land to another, "his heirs and assigns for ever, subject to the limitations hereinafter expressed as to part thereof," limiting in the *habendum* the estate of the grantee as to one-half, to his own use during his natural life, and at his decease to descend to his children by him lawfully begotten, and to the issue of such as were then deceased. *Held,*

1. That the *habendum* in reducing the estate in one-half to a tenancy for life was not repugnant to the premises of the deed, and for that reason void; but, that the grantee took by the deed, a fee simple as to one-half of the land granted, and a life estate in the other, with remainder in fee to his children or their issue:

2. That the estate in the grantee as to the part granted to him during his natural life was a life estate, and not a fee tail, for the manifest intent of the grantor, as inferred from the terms of the grant, was that the remainder-men should take as purchasers, and not by descent, or heritable succession ; and no remainder was limited to the heirs of the grantee *as such,* so that the rule in Shelly's Case could apply.

ERROR to the Common Pleas of *Bedford county.*

This was an action of debt, entered in the court below, to September Term 1857, between F. A. Tyler as plaintiff, and William E. Moore as defendant, in which the following case was stated for the opinion of the court :—

The parties in this case agree upon the facts herein set forth, as a case stated, the same to be considered in the nature of a special verdict rendered, and either party to have the right to take a writ of error to the judgment rendered by the Court of Common Pleas.

Francis Tyler was the owner of three hundred acres of land, situate in the township of Athens, in said county, in fee simple. On the 22d day of August, A. D. 1849, he conveyed the same to his son, Francis A. Tyler, for the " consideration (as set forth in the deed), of love and natural affection, and for the sum of $1500, lawful money, &c., have granted, bargained, sold, aliened, enfeoffed, released, and confirmed, and by these presents do grant, bargain, sell, alien, enfeoff, release, and confirm unto the said party of the second part, his heirs and assigns for ever, subject to the limitations hereinafter expressed as to part thereof, &c.

"Together with all and singular the rights, privileges, and appurtenances thereto belonging, or in anywise appertaining, and the reversions and remainders, rents, issues, and profits thereof, and all the right, title, interest, and claim of the said party of the first part, in law or equity of, in, or out of the same, except as hereinafter mentioned and reserved.   To have and to

[Tyler v. Moore.]

hold one hundred and fifty acres, the east end of said tract, by a line parallel with the west line of said tract, with the appurtenances to the said party of the second part, to his own use, benefit, and behoof during his natural life, and at his decease the said one hundred and fifty acres with the appurtenances, to descend to and the title thereof vested in the children of the said party of the second part, by him lawfully begotten. And if any of the children of the said party of the second part shall then have deceased, leaving lawful issue, such issue to take the share of the parent so deceased, the heirs and assigns of such children and issue for ever. Provided, however, that the said party of the second part may, by will or other writing, appoint and direct in what manner the said premises shall be divided among his said children and their heirs, and what amount of interest each shall have in the same, but in default of his making such appointment, the same to be held by his said children and the lawful issue of such child or children as may have deceased, as tenants in common, their heirs and assigns for ever; such issue to take the share that would have belonged to the parent; and as to the remainder of the said piece, parcel, or farm of land, to have and to hold the same to the said party of the second part, his heirs and assigns, to his and their use, benefit, and behoof for ever.

"The said Francis Tyler, party of the first part, hereby reserving the right of supplying himself with wood from the last-described premises during his natural life."

This deed was acknowledged and delivered to Francis A. Tyler, and recorded, and possession delivered in accordance. At the time of the execution and delivery of this deed, Francis A. Tyler had three children, Caroline, Annie, and Charles, who are still living, and are the only children of the said Francis A. Tyler.

For the purpose of barring the estate tail, if the deed from Francis Tyler to Francis A. Tyler created one in him, the said Francis A., in and to the one hundred and fifty acres, which by the said deed was to descend to his children, the said Francis A. Tyler and his wife, on the 12th day of May, A. D. 1856, executed a deed to James H. Webb, Esq., which was acknowledged and filed in open court, in accordance with the Act of Assembly, passed the 16th day of January, A. D. 1799, and in said deed of conveyance it is set forth that it is the intention of said deed and of the said grantors thereby to debar any estate tail in possession, reversion, or remainder, that they the said grantors hath or have in the lands, tenements, or hereditaments so intended to be granted. The consideration expressed in said deed was $1000, and the same was recorded within six months.

On the 23d day of May, A. D. 1856, the said James H. Webb and his wife by deed reconveyed the said one hundred and fifty

[Tyler *v.* Moore.]

acres of land to Francis A. Tyler. The consideration expressed in said deed was $1000, which said deed was recorded.

On the 1st day of April, A. D. 1857, the said Francis A. Tyler and wife, for the consideration of $10,000, as expressed in said deed, conveyed the said three hundred acres of land to the said William E. Moore.

Six thousand dollars of the purchase-money was, or has been paid by the said William E. Moore, to the said Francis A. Tyler, and there remains due and unpaid $4000 and interest, which is the amount of the judgment in this case.

At the time of the execution of the deed from Francis A. Tyler and wife to the said William E. Moore, the said Moore executed and delivered to the said Tyler a judgment-bond for the sum of $4000, which was in words and figures, to wit: Said bond, dated the 1st day of April, A. D. 1857, for the sum of $5500, payable as follows: $1500 one year from date, with interest. The balance, $4000, four years after date, with interest annually. The first payment of $1500, with the interest, to the 1st day of April, A. D. 1859, is paid, leaving the payment of the $4000 unpaid, with the interest from the said 1st day of April, A. D. 1859, upon which judgment was entered on the 6th day of June, A. D. 1857, which is the judgment in controversy.

The plaintiff, John Southworth, purchased the same for a valuable consideration, on the 22d day of August, A. D. 1857, which was filed on the 27th day of August, A. D. 1857.

The deed from Francis A. Tyler to William E. Moore was in the usual form of bargain and sale, with the clause of general warranty.

The deeds referred to in this case to be received as a part of the case, and read on the trial in evidence.

It is contended, on the part of the defendant, that F. A. Tyler took but a life estate—by the deed from his father—to the one hundred and fifty acres designated in said deed, and that the title is defective in him, and for this reason he is not bound to pay this judgment.

If, upon the facts herein stated, the court shall be of opinion that they form a defence, and that the defendant in this case can in law set the same up as a defence against the plaintiff, John Southworth, then judgment to be entered for the defendant, otherwise judgment to be entered for the plaintiff, with interest and costs.

The case stated was filed September 11th, A. D. 1860, and argued by counsel, and the judgment of the court (WHITE, P. J.) rendered for the defendant November 4th 1861, in the following opinion:—

"The deed from Francis Tyler to Francis A. Tyler, of the 22d August 1849, contains, in its premises, a grant of the land therein

[Tyler *v.* Moore.]

described to Francis A. Tyler, his heirs and assigns for ever, subject to the limitations thereinafter expressed as to part thereof. The whole grant embraces three hundred acres, and without the reservation in *habendum* would have been an unconditional alienation of the whole in fee simple.

" The *habendum* qualifies the estate in one hundred and fifty acres of the grant, and restricts it 'to the use, benefit, and behoof of said party of the second part during his natural life, and at his decease to descend to, and the title thereof vested in the children of the said party of the second part, by him lawfully begotten; and if any of the children of the said party of the second part shall then have deceased, having lawful issue, such issue to take the share of the parent so deceased, the heirs and assigns of such children and issue for ever : Provided, however, that the said party of the second part may, by will. or other writing, appoint and direct in what manner the said premises shall be divided among his said children and their heirs, and what amount of interest each shall have in the same; but in default of his making such appointment, the same to be held by his said children, and the lawful issue of such child or children as may have deceased, as tenants in common, their heirs and assigns for ever.'

"The limitation in the *habendum* controls the grant, and determines the character and extent of the estate granted : Wager *v.* Wager, 1 S. & R. 375; Moss *v.* Sheldon, 3 W. & S. 160.

"The estate granted to F. A. Tyler is a life estate, with a remainder in fee to his children, and the issue of such of his children as may have deceased prior to the determination of his life estate.

"It is not an estate in fee tail, because

"1. The remainder is 'to descend, and the title thereof to be vested in the children of the tenant for life, and the issue of his deceased children, and the heirs and assigns of such children and issue for ever.' There is nothing in the language used to express the grant, showing that the grantor intended to use the word 'children' as convertible with or equivalent to the word 'heirs.' Children, in its legal import, is a word of purchase and not of limitation. It may be a word of limitation, if such appears to have been the intent with which it is used; but such intent must be plainly and unequivocally expressed in the deed, or other instrument of writing creating the estate; otherwise it is regarded in law as a description or designation of the persons in whose favour the grant is to take effect: Guthrie's Appeal, 1 Wright 14.

"2. The limitation of the remainder is 'to the children of the tenant for life, to the issue of deceased children, and the heirs and assigns of such children and issue as tenants in common.'

[*Tyler v. Moore.*]

"The grant to the remainder-men, as tenants in common, avoids and annuls the common law rule of descent, applicable to estates in fee tail. These descend to the heir at law of the tenant for life, and not to his children as tenants in common : Guthrie's Appeal, 1 Wright 21; Reinhart *v.* Lantz, Id. 491. It is evident, therefore, that the grantor intended that the estate, limited on the life estate, should be an estate in fee simple, vesting directly in the remainder-men by the terms of the grant, and not under legal rules applicable to estates acquired by descent.

"3. The expression in the grant, 'children of the said party of the second part, by him lawfully begotten,' is no more equivalent to the expression 'heirs of his body,' than the word 'children' is to the word 'heirs.' The words 'by him lawfully begotten,' do not enlarge or diminish the estate ; are mere surplusage, and if stricken out the grant would remain unaffected.

"4. The power of appointment, conferred on the tenant for life, 'to direct, by will or other writing, in what manner the said premises shall be divided among his children and their heirs, and what amount of interest each shall have in the same,' is a limited power, implying the absence of any power of disposition more extensive, and negativing the assumption that the grantor designed to vest in him such an estate as would, under technical rules of law, give him the absolute control of the fee, and thus enable him to cut off and destroy the estate granted to his children.

"5. The intention of the grantor is expressed plainly and unequivocally in the deed. There is no ambiguity in the terms used to express the grant, and no room for doubt. The estate granted to F. A. Tyler is a life estate, *eo nomine*, 'to the use, benefit, and behoof of said party of the second part during his natural life.' The estate granted to the children is an estate in fee simple, to be enjoyed after the determination of their father's life estate.

"The grant is to them distributively as tenants in common, with words of limitation superadded, 'to them and their heirs and assigns.'

"'Words of distribution, with words of limitation superadded, show that the remainder-men take not as heirs, even though described as such, but as a new root of succession :' Guthrie's Appeal, 1 Wright 21; Chew's Appeal, Id. 27; and, *à fortiori*, if they are not described as heirs, but designated by words which, in their legal import, are words of purchase, and not words of limitation.

"To convert such a grant into an estate tail would require strong qualifying and explanatory expressions, such as are not found in this deed.

[*Tyler v. Moore.*]

" Judgment is entered upon this case stated in favour of the defendant."

The case was thereupon removed into this court by the plaintiff, for whom the entering of judgment in favour of defendant was assigned for error.

*H. W. Patrick* and *J. C. Adams*, for plaintiff in error.—I. The deed from Francis Tyler to F. A. Tyler, was a fee simple to the grantee, with an attempt to limit the same to his proper heirs. The words of the grant are to the grantee, " his heirs and assigns for ever." The words of the *habendum*, " to the said party of the second part, to his own use, benefit, and behoof during his natural life, and at his decease, the said one hundred and fifty acres, with the appurtenances, to descend to and the title thereof vested in the children of the said party of the second part, by him lawfully begotten," " the same to be held by his said children, and the lawful issue of such child or children as may have deceased, as tenants in common, their heirs and assigns for ever."

The question under this grant is, would the children of the grantee take by descent from their father at his decease, or by purchase under the grant from Francis Tyler. By the language of the grant, on the death of the grantee, the land was to descend to his children, their heirs and assigns; consequently the grantor must have held an inheritable estate, and as it descends to those who are entitled to take under our intestate laws, that estate must have been a fee simple. The word *descend* has a fixed and definite meaning, is in direct opposition to the word purchase, and rebuts the idea that the children of the grantee were to take by purchase on the death of their father. At the date of the grant, the grantee had three daughters, and by its terms nothing vested in them, nor was it to vest in them until the death of their father, and then by descent, and in the same manner as by the intestate laws of Pennsylvania; consequently the attempted limitation had no effect to change the fee given in the premises. Had the grant to F. A. Tyler, in the premises, been for life, and in the *habendum* " to his right heirs," no matter in what way they were named, it would be a fee simple; but in this case the fee is first given to the grantee, with an attempt, on the part of the grantor, to limit and restrain in the hands of the grantee. Had the grantee died possessed of the three hundred acres under this deed, the whole would have descended to his three daughters as his legal heirs, the limitation being to his "right heirs," by the name of *children*, to the one hundred and fifty acres, would not alter the line of descent. By the limitation, the children were to take as " tenants in common." They would have taken as tenants in common by the law of descent. If any of the

[Tyler *v.* Moore.]

children died, leaving lawful issue, they "were to take the share of the deceased parent." This would have been so, without the words of the grant, by the intestate laws.

Every grant or conveyance of land in this state is to be construed according to the laws of the state, and the intention of the grantor is found in the legal construction of the words used in the grant. See the Intestate Laws, passed 8th April 1833, §§ 8, 9, 10, 11, 12, 13, 14.

The grant makes but one estate; no remainder is carried out or attempted to be by the grantor, either vested or contingent. The words used in the *habendum* are an attempt by the grantor to control the fee in the hands of the grantee, which he had not the power to do. The words used by the grantor in the *habendum* give to the grantee a fee simple had it been otherwise in the premises. See Bacon's Abridg., Vol. 3d, 426, 429.

It is said that this construction defeats the intention of the grantor. We can only judge of the intention of the grantor by the words he has used in the grant. Do the legal words of the grant give to the grantee an inheritable estate in this piece of land?

1. The grant is to him and his heirs and assigns for ever. These are not the words used to give a life estate. No conveyancer would think of giving a fee simple to the grantee in the premises, and limit and restrict it to a life estate in the *habendum*. The *habendum* may lessen, enlarge, explain, or qualify, but must not contradict or be repugnant to the estate granted in the premises: Wager *v.* Wager, 1 S. & R. 375, 380; 4 Kent's Com. 468; 2 Black.'s Com. 298; Jackson, &c., *v.* Ireland, 3 Wend. 99.

2. At the decease of the grantee, the one hundred and fifty acres was "to descend to and the title thereof vested in the children of the said party of the second part." The title to the land was not to vest in the children till the death of their parent, and then it was to descend to them, not by virtue of the grant from the grantor, but from their immediate ancestor, by virtue of the inheritable title vested in him.

The word *descent*, when used in the transmission of estates, has a legal meaning attached to it, which does not differ from the plain, ordinary, popular meaning which is understood by every one who uses it. See Ellmaker *v.* Ellmaker, 4 Watts 90.

To make this a life estate in the grantee, we must reject the most important words of the grant, or entirely pervert their meaning: Doe *v.* Prescott, 4 Johns. 70; Williams *et ux. v.* Leach, 4 Casey 88; Negley's Appeal, 9 Id. 89; McKey *v.* Kinley, Id. 92; Reifsnyder *v.* Hunter, 7 Harris 41; and Walker *v.* Vincent, Id. 369. See also 1 Hare's Rep. 428; 1 Jacobs & W. 158; 31 State Rep. 292.

II. If the grantee did not take a fee simple under the deed, it

must have been a fee tail. While the general rule is that "heirs of the body" are words of limitation, and that "children" is a word of purchase, these words do not always control. The intent of the testator or grantor as gathered from the words used, may control the words "heirs of the body" so that they signify children, and are words of purchase; and the word "children" so that it will be construed to mean "heirs of the body," and consequently a word of limitation : Hayes on Estates Tail.

The great question is, would the children of F. A. Tyler, on his death, take an estate from their father by descent, or a new estate by virtue of the grant of the fee to them by Francis Tyler. If they took under the grant they had a vested interest in remainder the moment the deed was executed, for every estate must take effect presently, either in possession or remainder.

If we examine the words used by the grantor in this case, we shall be troubled to find that he grants to the children of F. A. Tyler any estate whatever ; he has not used words to vest in them any interest until the decease of the grantor, their father. The fee simple passed by the deed, and if it did not vest in the children it must have vested in F. A. Tyler. It is evident that the grantor used the word children in the meaning of heirs of the body, or issue, for in the premises of the deed he uses the word heirs without distinction as to the two divisions of land, gives a fee in the whole to the grantee, subject to the limitations, &c. The fee is what he undertakes to limit and control by directing that it shall descend and be vested in the children of the grantee after his death. The estate is granted in fee by the use of the word heirs ; did the grantor mean anything but heirs in the *habendum* when he used the words children and their heirs and assigns for ever ? It is conclusive that he did not, for he continues the estate from the grantee by descent to his children at his decease, thus making *children* mean *heirs of the body*, or *issue lawfully begotten*, taking by descent and not by purchase. The word *descent* has but one meaning, and its use by the grantor here shows conclusively that the grantee had an inheritable estate to descend to his children (issue lawfully begotten).

The decided cases show that where an estate for life is first given to A., and then limited in remainder to the heirs of A.'s body, A. will take an estate tail, although this may appear to defeat the intent of the grantor or testator : and this rule not only applies in cases where words of limitation are used, as *heirs of the body*, but also where other words to the same effect are used, such as *son's children*, &c., so long as they are used in that sense : Smith *v.* Webber, 1 B. & Ald. 713 ; Blesard *v.* Simpson, 3 M. & G. 930 (E. C. L. R. 42) ; Millish *v.* Millish, 2 B. & C. 520 ; Wright *v.* Leigh, 15 Ves. 564 ; Hodge *v.* Middleton, 2 Doug.

[Tyler *v.* Moore.]

431; Broadhurst *v.* Morris, 2 B. & Ad. 1; Voller *v.* Carter, 4 Ellis & Bl. 172 (E. C. L. R. 82).

The doctrine that wherever *children* is used as a word of limitation it is construed to mean "heirs of the body," is recognised by our courts: Gernet *et al. v.* Lynn *et al.*, 7 Casey 99; Ellet *v.* Paxton, 2 W. & S. 418.

It is clear that when "children" is used as a word of limitation, it comes within the spirit and meaning of the rule in Shelly's Case. Whenever the word "children" is used to designate the persons who are to receive the estate from their immediate ancestor, it is a word of limitation; but where it is made the terminus or stock from which a new succession springs, there it is a word of purchase: 2 B. & P. 485; Moore 307; Wood *et ux. v.* Baron, 1 East 259; Robinson *v.* Robinson, 1 Burrows 38; Hileman *v.* Bouslaugh, 1 Harris 351; Roe *v.* Bedford, 4 M. & S. 363; Rundale *v.* Eely, Carter 170.

The words used in the grant, "heirs and assigns for ever," cannot, by the context, be changed so as to destroy the inheritable estate. The word *heirs* may be limited to the body of the first taker in the *habendum*, so as to create an estate tail, but not to destroy the inheritance and make a life estate of it: Breitenback *v.* Dungan, 1 Am. Law Reg. 419; Wager *v.* Wager, 1 S. & R. 375; Earl of Rutland's Case, 8 Co. 112.

It is contended that because the children are to take as "tenants in common," they must take by purchase; that it is contrary to the "common law rule of descent applied to estates in fee tail; these descend to the heir at law of the tenant for life, and not to his children as tenants in common." If the word *children* meant "heirs of the body," in this case, then the words *tenants in common* are not sufficient to control the intent of the grantor, that the estate should descend from the grantee. Hayes, in his work on Estates Tail, says: "Words of distribution, of modification, or of regulation, appended to or blended with the limitation to the heirs special, prescribing the mode of enjoyment, or the order of succession, as to take as tenants in common, or share and share alike," are not sufficient to control the words *heirs of the body*, and make a life estate, &c.; and refers to Doe *v.* Smith, 7 Taunt. 531; Pearson *v.* Vickers, 5 Id. 548; Doe *v.* Goff, 11 East 668; Bennett *v.* The Earl of Tankerville, 19 Vesey 170; Jesson *v.* Wright, 2 Bligh 1; Doe *v.* Harvey, 4 B. & C. 610. The cases of Little *v.* Little, 4 Watts 259, Miller *v.* Lyman, 7 Barr 443, Gernet *v.* Lynn, 7 Casey 94, Id. 165, Guthrie's Appeal, 1 Wright 9, and other cases relied upon by the defendant, are all cases where an express life estate was given to the first taker, and the remainder given to children, &c., without any controlling words to show that the word "children" was not used in its legal and ordinary sense, as a word of pur-

[Tyler v. Moore.]

chase; and in each case the first taker was held to take only a life estate, and consistent with the current of authorities from Shelly's Case down to the present time. There must be controlling words to show that the word *children* was used as a word of limitation, or it must be construed as a word of purchase.

In this case the grantor has expressly said in the grant in what sense he used "heirs and assigns for ever;" that after the decease of the grantee, the estate which had been granted to F. A. Tyler should descend to and be vested in the children, &c.; by the word children he meant *heirs of the body*, or else we make the grantor speak nonsense, or throw away entirely the most important words used in the grant. It is an important part of the case that the grant in the first instance gives to F. A. Tyler the fee simple. There is no mistaking the meaning of these words; they are subject to the limitation afterwards expressed. The limitation qualifies the fee; it does not take it away. And from the fact that the grantor used the word "heirs" of the grantee, in making the conveyance to him, we may conclude that he used the word "children" as a substitute for "heirs," and synonymous with it. This would be a reasonable construction, had we nothing further to aid us in discovering the intent of the grantor; but fortunately the grantor has put this construction in a clear light, by the words he has used to limit the estate, by saying "it shall descend to and be vested." The meaning is so clearly expressed—pointing out and naming the grantee as the root of descent, making the estate descend from him to his children (heirs of his body)—that it is impossible to come to any other conclusion than that F. A. Tyler took an inheritable estate.

This being an estate tail, the conveyance made by F. A. Tyler to James H. Webb, for the purpose of barring the estate tail, and the reconveyance to him by said Webb, made a clear title in fee simple in said Tyler : Ransley v. Stott, 2 Casey 126.

*William Elwell*, for defendant in error.—The questions raised by the case stated have been so fully considered in several recent cases decided in this court, that it is not deemed necessary to discuss the principles, nor refer to the authorities which are so fully discussed and examined in them. Guthrie's Appeal, 1 Wright 9, Chew's Appeal, Id. 23, Gernet v. Lynn, 7 Casey 94, and the authorities referred to in them, exhaust the whole subject, and settle the law that the word "children" is not an equivalent for "heirs;" that it does not primarily indicate heritable succession, but individual acquisition; that in order to depart from this, its ordinary meaning, there must be an express warrant for it under the hand of the author of the gift—conjecture, doubt, or even equilibrium of apparent intention will not suffice. It is a word of purchase, and not of limitation, unless

[Tyler *v.* Moore.]

it is to comply with the intention of the donor, when the words cannot take effect in any other way. It differs in nothing from a designation of individuals by name. "Children" in law is as certainly held to be a word of purchase, as "heirs of the body" are to be words of limitation.

But it is contended here that, in spite of the real intention of the grantor, and notwithstanding this fixed meaning to the word children, a fee simple was conveyed to F. A. Tyler, by the deed of his father.

The land conveyed was a farm containing three hundred acres. The consideration was love and affection, and $1500. The grant was to the son, his heirs and assigns, "subject to the limitations hereinafter expressed as to part thereof. The *habendum* limits the estate granted to the son as to one-half of the farm, one hundred and fifty acres on the east, to his own use, benefit, and behoof, during his natural life, and at his decease to descend to and the title thereof be vested in his children by him lawfully begotten," &c. The premises of the deed are not complete. They do not contain in themselves "the certainty of the grantor, grantee, and thing granted," but expressly refer to the latter part of the deed for explanation of the intention of the grantor. See 2 Blackstone 298, for the office of the *habendum*.

We submit that there can be no contradiction between the premises and the *habendum*, when the former by express reference makes the latter a part of itself. In cases much stronger than this, the *habendum* has been allowed to control the grant and determine the extent of the estate granted : Wager *v.* Wager, 1 S. & R. 375; Moss *v.* Sheldon, 3 W. & S. 160; Brink *v.* Michael, 7 Casey 169.

In seeking after the intent of the grantor we have several things to direct us in this case. If he had intended the whole farm to vest in his son in fee simple, the conveyance would have been of both parts alike. Why use different language in regard to the eastern half of the farm, from that employed as to the other? Why say as *to that* he had imposed a limitation upon the estate which otherwise would appear to be granted to the son?

Again : The language employed expresses the intention that the son shall have but a life estate. To have and to hold during his natural life, "and at his decease," &c.

Still further : If a fee had been intended to be conveyed, the grantor would not have given to the son the power of appointment. If he had intended to, or believed that he had given him absolute control over the property, to all intents and purposes, he surely would not have thought it necessary to give him any power of disposition. And,

Lastly : After providing especially for this part of the farm, giving it to the son for life, and designating the remainder-men,

[Tyler *v.* Moore.]

to wit, the children of the son, further reference is made to the other part of the farm in these words, " and as to the remainder of the said piece or parcel of land, or farm, to have and to hold the same to the party of the second part, his heirs and assigns, to his and their benefit and behoof for ever."

Taking this latter clause with the earlier part of the deed, the whole should be construed as if it read thus : " do grant, &c., unto the party of the second part, his heirs and assigns, all the western part of the farm, hereinafter described, and to him for his life and to his children, at his death, all of the eastern half thereof." This gives force and operation to all the words of the conveyance.

But it is contended that the intent of the grantor must not be allowed to prevail, " because an estate of inheritance was vested in the first taker by the premises in the deed, and the *habendum* is repugnant to it." This position fails the plaintiff in error, when it is shown that the reason for rejecting the *habendum* given in the books does not hold good in this case. By reference in the first part of the deed to a clause in the latter part to explain and qualify the first part, the whole instrument is in perfect harmony with itself.

The remainder-men, it is true, are the children of the first taker, and therefore if he had died without making a will, and had owned the property in fee, it would descend to them. In Guthrie's Appeal, 1 Wright 16, we have an answer to the arguments on the other side, that the conveyance is to be construed as if it had been to the right heirs of the son.

The word " descend," as used in this deed, is mere surplusage ; the words " vested in" covered the whole ground. If the deed had provided that, at the decease of the first taker, the property should descend to the eldest daughter, surely it could not be contended that because she would have been an heir if he had died seised of the fee, that therefore the use of that word made an estate in fee which otherwise would have been a life estate.

2. If the word children is not equivalent to " heirs," in order to create a fee simple, then they will not create an estate tail. The word heirs is indispensable to create an estate tail : 11 Bouv. Inst. 221. " Children" is insufficient, and cannot take the place of heirs ; 2 Black. 115 ; Miller *v.* Lynn, 7 Barr 443 ; Gernet *v.* Lynn, 7 Casey 94 ; the ruling in Miller *v.* Lynn was affirmed.

When the word " children" is used to designate the objects of the testator's bounty, and some of them are in existence, the remainder neither hangs in abeyance nor rests in the life estate to await the coming of claimants who may answer the description of heirs of the first taker at the time of his death.

A presumption that remainder-men who stood in the relation

6 Wr.—25

[Tyler v. Moore.]

of heirs of the tenant for life take as heirs is made only when technical words of limitation are applied to the remainder-men, when the gift is to "heirs" or "issue." The fact that the remainder-men stand in the relation of heirs is insufficient to overcome the presumption of law; that by "sons," &c., purchasers were meant, even though the testator directed they should take in the order of heirs: Guthrie's Appeal, 1 Wright .16. In Wager v. Wager, 1 S. & R. 274, the word heirs is used in connection with "children;" yet only a life estate was considered as intended to be granted. The cases of Smith v. Webber, 1 B. & Ald. 713, and Blesard v. Simpson, 3 M. & G. 930, differ from our case in this, the devises were to the first taker and his heirs, and if no children were left then over. Here children was not used as a word of purchase, but held to mean "issue." So all the cases cited upon the other side are of the same character, and contain either the words heirs, issue, or inheritance, used in such way in connection with the word "children," as to clearly indicate that it was used as a word of limitation, and not of purchase.

The researches on the other side have proved the correctness of the statement of Mr. Justice Strong, in Guthrie's Appeal, that "it has been held from Wild's Case, 6 Coke, down to the present day, that when the devise of the remainder is not to 'heirs' or 'heirs of body,' but to 'children,' they take as a new stock, and not as heirs.'"

The opinion of the court was delivered, April 21st 1862, by

STRONG, J.—The fallacy of the argument submitted by the plaintiff in error, lies in the assumption that in the granting part of the deed, the whole of the three hundred acres were granted to Francis A. Tyler, in fee simple, that is, to him and to his heirs and assigns for ever. Hence it is inferred that the *habendum*, if it be held to reduce the estate to a tenancy for life, is repugnant to the premises, and therefore void. If, however, the assumption may not be made, then the premises and the *habendum* are not necessarily repugnant to each other, and both may stand. The purpose of an *habendum* is to define precisely the extent of the interest granted. It may lessen, enlarge, explain, or qualify the interest described in the premises, but it must not be totally repugnant to it. Thus, if in the premises an estate be granted to one in fee simple, that is, to one and his heirs, it may by the *habendum* be lessened to an estate tail, that is, to an estate to him and the heirs of his body. In such a case effect will be given both to the premises and to the *habendum*. The latter does not contradict the former. It only defines what heirs of the grantee were intended by it. Still it is true, that if the *habendum* be absolutely repugnant to the premises, if it cannot

[Tyler v. Moore.]

be reconciled with them, so that full effect can be given to both, it must give way, and the premises must stand. Thus if there be a grant to one and to his heirs, *habendum* to him for life, there is an irreconcilable contradiction, for it cannot be an estate for life, and at the same time an estate in fee simple; either the word heirs in the premises must be stricken out, or effect must be denied to the *habendum*. In a deed the premises will prevail: 2 Reps. 23; 2 Black. Com. 298; Goodtitle v. Gibbs, 5 B. & C. 709; Wager v. Wager, 1 S. & R. 374. It has indeed been held that effect will be given to an *habendum* which reduces the estate given by the premises from a fee to a freehold not of inheritance. It was so held in Moss v. Sheldon, 3 W. & S. 160, where there was a grant to one and the heirs of her body legally begotten, or to be begotten, to have and to hold to her for life. The court ruled that she took only an estate for life. Notwithstanding this and a few other authorities, I think it well settled, that where there is a clear repugnance between the premises in a deed and the *habendum*, the latter is void. But it is equally clear that a deed must be so construed, if possible, that no part shall be rejected. There is great force in the remarks of Chief Justice Tilghman in Wager v. Wager, 1 S. & R. 374, when he said, "The object of all constructions is to ascertain the intent of the parties, and it must have been their intent to have some meaning in every part. It never could be a man's intent to contradict himself, therefore we should lean to such a construction as reconciles the different parts, and reject a construction which leads to a contradiction." This rational and salutary rule of construction is more than disregarded, it is reversed, by the assumption of the plaintiff that the entire three hundred acres which were the subject of the deed, were by the premises conveyed to Francis A. Tyler in fee simple. Such a construction would not only make the premises and the *habendum* contradict each other, but it would strike out of the deed, or render unmeaning, a part of the premises. By them the grantor conveyed the three hundred acres to the grantee, his heirs and assigns for ever, "*subject to the limitations hereinafter expressed as to part thereof.*" Those limitations are found in the *habendum,* which, by the reference, is incorporated into the premises. Now, if there was a grant of all the land to F. A. Tyler and his heirs, this clause "subject to the limitations hereinafter expressed as to a part thereof," can have no possible meaning. Then, a grant expressly declared to be subject to limitations, is unlimited. Surely that was not the intention of the grantor, either in the premises or in the *habendum*. The fact is not to be ignored that the premises are not complete without the words of the *habendum*. They do not determine what land or what estate was granted, and they invoke the aid of the subsequent part of the deed.

That subsequent part is therefore to be construed with them. Nor is there any difficulty in giving effect to all the words of the deed. The argument of the plaintiff in error is unsound when it asserts that if F. A. Tyler took but an estate for life in the one hundred and fifty acres which lay at the east end of the entire tract, the words "his heirs and assigns for ever," must be stricken out of the premises, or denied significance. They operate to give a fee simple in the west half of the tract, which is carefully distinguished from the eastern half, and this, their limited operation, is expressly declared in the *habendum*. Then there is no necessary repugnance between the different parts of the deed, and full effect may be given to the whole.

Again, it is insisted that even if F. A. Tyler did not take a fee simple in the east half of the land, if the words of the *habendum* are not to be rejected as contradictory to the premises, still they defined his interest to be a fee tail, which, by the subsequent deed barring the issue in tail, became a fee simple. This position, however, is entirely untenable. The language of the *habendum* is, " To have and to hold one hundred and fifty acres, the east end of said tract, by a line parallel with the west line of said tract, with the appurtenances, to the said party of the second part, to his own use, benefit, and behoof during his natural life, and at his decease the said one hundred and fifty acres, with the appurtenances, to descend to, and the title thereof to be vested in, the children of the said party of the second part by him lawfully begotten; and if any of the children of the said party of the second part shall then have deceased, leaving lawful issue, such issue to take the share of the parent so deceased, the heirs and assigns of such children and issue for ever."

In view of what we have said in several recent cases, it is not worth while to spend much time in showing that there is nothing in this to enlarge the estate given to Francis A. Tyler, expressly for his natural life, into a freehold of inheritance. There is no remainder limited to his heirs *as such*, and of course there is no room for the application of the rule in Shelly's Case. After his death the land was directed to descend to and become vested in his children, and the issue of children then deceased. That heritable succession from the tenant for life was not intended by the grantor, is manifested in three ways, by the use of apt words of purchase, *i. e.* children, in describing the remainder-men, by giving the land to them distributively as tenants in common, and by adding words of limitation in fee to the grant to them. The words of distribution and of superadded limitation could have no effect if the remainder-men take as heirs, and they therefore evidence an intent of the grantor to originate a new stock, and they evidence it so strongly, that combined they are uniformly

[Tyler *v.* Moore.]

held to overcome the force of our technical words of limitation, and reduce them to words of purchase.

Against all this it is vain to say the intention of the grantor that the remainder-men should take by descent, and not as purchasers, is to be inferred from the expression that after the decease of the tenant for life the land should "descend and the title be vested in his children." This is far from being sufficient to overturn the unequivocal meaning of the remaining language. What was intended by the word "descend," is explained by the alternative words, "title be vested in." We must hold it so, or it becomes contradictory of the grant to children as such, as well as of the added words of distribution and limitation. In a will a testator may use the word children as meaning heirs of the body. Possibly a grantor may in a deed; but his intention to do so must be clearly shown. Words of purchase will be treated as such until it has been unmistakably shown that the grantor designed to use them in a different sense. In the present case this has not been shown, and the judgment of the court below was therefore correct.

Judgment affirmed.